May it please the court. Is a work environment hostile when an employee endures years of unwanted touching, lewd remarks, and intimidation? If Title VII is to have any force, the answer should be an emphatic yes. Heather Hoekstra established the severe or pervasive element of a hostile work environment. Severe because there was deliberate- Let me ask you something about the Ford stamping plant in Chicago. So this is a lot of heavy machinery lying around? Yes, your honor. Do a lot of women work in a stamping plant? Your honor, the record's not clear, but just based from what I can tell, it seems that women are in a distinct minority. There's no numbers in the record as far as I know, but it seems to be a male-dominated preserve. Yeah, I would think so. The harassment is severe because there was deliberate touching of Hoekstra's breasts and buttocks, along with hair pulling, interspersed with comments about her body, her underwear, and sex. Does Ford have any rules when they hire someone? Do they say something like, you know, you mustn't touch women? Your honor, I believe in Rebecca Taylor's deposition, she talked about the union contract, and I believe when an hourly employee signs on with Ford, there is mention of the anti-harassment policy. So I'm not sure, I don't believe that employees sign any sort of policy, but I know that it's referenced in the union contract. The harassment is also pervasive because there were over 20 perpetrators, the harassment lasted years, and despite Hoekstra's complaints, the harassment never stopped. For these reasons, these same reasons, the environment was both objectively and subjectively hostile. The male employees of Ford Chicago Stamping Plant reduced Hoekstra to an object, a source of amusement and sexual gratification. Now the district court never definitively answered whether the harassment was severe or pervasive, but at the opinion's outset, in setting the tone for the rest of the decision, the court states, quote, the accused persons harassed her or retaliated against her, only for a limited period of time, or in some cases, only in one isolated instance. Now she reported in the late 90s, she reported to the Labor Relations Department, and she also reported to this Carl Horton, who was a supervisor then between 01 and 03, and then these various incidents that occurred before 2011, she didn't make any reports. Correct, Your Honor, there's a time frame between approximately 07 and 2010, where she did not report any of those individuals. And our point is that the Rosentrader and Horton incidents where she was essentially basically told, go back to work, in the Rosentrader instance, and the Horton instance, you know, she claims that there was retaliation after she reported, basically, you know, she essentially learned the ramifications of reporting, which was- And that was with Horton, that was she, let's see, the day after she reported the first time, or paid with a dock for arriving at work 40 seconds late for the shift? Yes, Your Honor. So essentially, she incurred the wrath of her co-workers for reporting. The district court's approach, as this court knows, the proper approach is to view the totality of circumstances, the entire context, and courts pointedly refrain from parsing or isolating out each incident of harassment. So this divergence with well-settled law is one of many plaguing the summary judgment opinion. Moving to the employer liability element, the question before the court is whether Ford prevented harm, future harm, when the harassment and intimidation continued for years. To ask is to answer. Ford did not exercise reasonable care to stop the harassment for the simple reason that the harassment never stopped. Title VII looks at whether future harm is prevented, and if there is ever a case where future harm was not prevented, this is it. Ford plays the one card it has, that some of the harassers stopped after counseling. And true, some did stop, but some continued. Horton, Vega, Wills, to be exact. But the debate as to who stopped and who continued is secondary. The real test is not whether Eugene White, for example, specifically stopped harassing after counseling. The test is whether Heather Hoekstra, generally speaking, was harassed again. Otherwise, Ford gets to hit the reset button after each new employee harasses. All the while, Hoekstra suffers. This is death by a thousand cuts. Ford's approach is without authority and inimical to Title VII. Employer liability also exists because Hoekstra- Were any of the harassers, were any of them fired or- No, none, your honor. None were even disciplined. None were disciplined either? No. So what did they say? They promised not to do it again or something? They were told not to touch her again. They were told not to do it. Under Ford policy, counseling, which is all these individuals received, is not disciplined. Now there is one caveat. One employee, Mr. Wills, was suspended for six days, and then after basically the investigation was resolved, he was brought back and given the six days with pay. So in essence, as we pointed out, a paid vacation. But to answer your question, no one was fired. No one was ever fully disciplined. It was only counseling. Your Honor, I'll follow Mr. Keller. Thank you, your honor. If there are no further questions, thank you. Thank you, Mr. Keller. Mr. Grant? Good morning, your honors. Karen DeGrand for Ford Motor Company. May it please the court. Judge Posner, to answer the question that you asked initially of counsel, yes, Ford does have a robust anti-harassment policy, which is in the record- I'll tell you what. A robust anti-harassment policy, which- It doesn't sound very robust. It doesn't seem to work at all. Well, I disagree with the court in making that observation. Let me ask you a preliminary question. So there are about 2,000 employees in this stamping plan, is that correct? I think that's roughly correct, your honor. I'm not sure that the- How many are women? I don't know the answer to that, and I can certainly find that out and supply that to the court if the court finds it relevant. Have you visited the Chicago stamping plan? Personally, I have not, your honor. From the pictures, it looks pretty rough. I mean, rough in the sense it's not a good plan or anything, but a lot of very heavy machinery is being moved around. I think that's correct, your honor. It's our position, your honor, that the court should affirm the district court's ruling on count one because as a matter of law, the record doesn't disclose a pattern of harassment. I don't get that. Okay. There's a lot of this harassment of Ms. Hexter going on, and what is Ford doing? Well, your honor- Ford isn't doing anything. Why doesn't Ford, when it hires someone, a man, say, look, don't touch the women workers? It doesn't do that, your- Unless, you know, you're rescuing them or something like that, or shaking hands. If you do that, you're fired. Well, your honor, Ford does- What do they tell people when they hire them? They tell them the information that's in Ford's anti-harassment policy, and that information is provided to all workers upon- Now you tell me what it says. All right, your honor. It defines harassment as conduct of a harassing nature, whether in the workplace or off-site, which has the effect of interfering with someone's work performance. And sexual harassment specifically is defined as abusive, offensive, or unwelcome sexual innuendos, joke, teasing, unwanted physical contact, and there's- And what's the sanction? Well, your honor, what has to happen first is the- What is the sanction? It depends on the circumstances. What is that form you just read? What does it say happens to you if you violate these regulations? There can be discipline that goes all the way to termination. What does the form say? I know it does say, your honor, that the potential discipline can involve termination, and it depends- That's what it says? Potentially, yes, depending on- What do you mean, essentially, yes? What does it say? Penalties for harassment or retaliation. If the investigation finds an employee has engaged in conduct that violates this policy, penalties will depend on the nature of the offense. Any and all breaches of the policy are considered serious. Appropriate discipline will be imposed, even for a first offense, ranging from a verbal warning up to including discharge. And that's in the record. And these various incidents that happened here, they didn't even rise to the level of a warning, right? Everything was counseling. There was, well- Except that one employee who was suspended, but then he was brought back and got his back pay reinstated. That's right, your honor, and that was after a full investigation. I mean, Ford's obligation- So here's the question. So if she's just making this out and pulling it out of her hat, why were they even counseled? Why wasn't she told if there was nothing to this? She was- You're just a pain. You're just complaining. You're just making these things up. Why would the men even have to be counseled if there was nothing going on? Your honor, nobody told her that there was nothing to it or that she was just a pain or that she was making things up. And I think that the deposition of Rebecca Taylor is pretty explicit on that. But like, for example, Mark Bowman counseled, but no discipline. Several of them. Cooper counseling, no discipline. Your honor, the question that this court's precedent presents is not whether there is an appropriate penalty for what are allegations that are made by one employee against another. I mean, the employer has to investigate these claims. The employer has- and there's no question of fact, I believe, that the employer in this case investigated the claims that were brought to his attention. But of course, since he never- since no one has ever fired, they're just given counseling. There's no- there is no- there is- there is only the weakest of incentives for the men to behave themselves. Your honor, I don't think it's correct to say that no one has ever fired. That's not a fact that's established by the record. In this instance, the allegations that were brought forth by the employee didn't result in anyone being fired. But the law requires- Well, it's very strange. I mean, I don't understand how they tolerate this. How Ford tolerates this. Ford doesn't tolerate it, your honor. Why doesn't it fire these people? Ford can't fire an employee without conducting an appropriate investigation. Yes, but the appropriate- but these investigations showed that they had done these specific acts. I don't think that's correct, your honor. That's not what the investigation- I mean, they deny- well, like the, you know, this sexual type of touching. They all denied that, and Ford credited them over her? Is that- Ford thinks that she made up all this stuff? No, they're- no, your honor. All right, so if they find that some worker, you know, violated company policy and the labor- and the collective bargaining and so on by, you know, this sexual touching, what's the sanction? In this case, there was no such finding, your honor. And that's the key- whether they thought she was lying about this, or whether, at least in some of these instances, they agreed this worker had touched her in this offensive way. Didn't they ever find that? Did they think she made it all up? Your honor, there's not a finding that she made it up. Did she make it all up? Your honor, I can't say whether she made it up. I can tell you what the reasonable investigation of Ford determined. And Ford doesn't just share one side of the story. Ford also speaks to the person who's being accused of harassment and any witnesses that they can find. And they conduct an investigation. I mean, you know- And did they find that she had never actually been molested? Your honor, there wasn't a specific finding of no one- Well, answer my question. Your honor, none of the very- Did they ever- Did they find that she was never molested, or found that she was sometimes molested, or found that they couldn't decide, they couldn't figure out what had happened? I'd like to answer your question with two parts. One is, there was not a finding that verified her accusations. But I also take issue with the court's characterization of it being molestation. If the court's considering the physical contact, largely arm and shoulder, one time her hands were touched, and this is over a period of many years, and of course, none of our conversation is, or none of our discussion here is taking into account the statutory bar and the very long gap in reporting, which was not 2007 to 2011, but 2003 to 2011. But there was no touching that involved any intimate area of the plaintiff other than one time the plaintiff reported that she was tapped on the rear. There was twice when she took the position that somebody had given her a hard hug and touched the side of her breast and giving her a hug. This is not the contact that this- What happened with those hugging complaints of hers? One of the hugging complaints involved Wills, who we spoke of earlier. There was an investigation. A number of people were interviewed, including the person who said that he had hugged her, and the witnesses did not bear out her accusations. So that person was suspended during the course of the investigation, and then once it was the- So are you saying that the company never found that there had been an offensive touching of her? That's correct, Your Honor. And what the court has looked at and what- Why shouldn't a jury decide that rather than a company? Because as a matter of law in this record, Your Honor- Look, what you're saying is the company can always believe the male worker, and therefore there's no remedy. That's not correct. That's not what I'm saying, Your Honor. Yes, you are. No, I'm not. Well, if the company believes the molester, that he wasn't molesting, that's the end of the case for you, right? No, that's not the end of the case. What happens next? The end of the case is once under- And it depends. Each situation is different. What happens next? If the accusation is not corroborated, if at the conclusion of the investigation is not corroborated- What do you mean corroborated? It means that there's some evidence based on looking at all the facts, not just- Well, she says she was molested. He says she wasn't. And how does the company make up its- make its determination? Well, it's a case-by-case situation, Your Honor. Well, suppose we think that the company doesn't really care about- figures it has to hire some women, but doesn't really want women in the stamping plant. And so you're saying there's really no judicial review of this. There's no way in which she could convince a trier of fact that the company had made a mistake when it exonerated the alleged molester. On this record, no, Your Honor. I mean, looking at what was done by Ford was objectively reasonable under the circumstances. It conducts its investigation. It doesn't just hear a denial and then say, we're closing our books. We're done with this. But it may be incorrect. Look, it's not a court. Why should its- why should its informal determination be- be binding, be conclusive? Because that's what the law says. The law says, did Ford act reasonably? And I think one of- maybe the strongest basis- The law says what reasonably? That the employer must act reasonably. Well, I don't think it's acting reasonably, actually. I don't think there's any evidence it's acting reasonably. Here's the evidence that it's acting reasonably is that in each instance when the plaintiff reported her claim, Ford conducted an investigation, counseled the person, or took whatever- And rejected the claim. No, that's not rejecting the claim. No, that's rejecting the claim. Of course, they're not giving her any relief. And- and here's the relief, Your Honor. There was no further harassment of her by these people. By the same person. By the same person. That's right, Your Honor. These are unconnected incidents. So I guess here- here's my question. So you don't think Ford was put on alert that there was something going on? I understand that she was late on some of these claims, but we're at summary judgment now. And- and I guess my question is, wouldn't they be on alert when you have an employee every year, once or twice a year, or have complaints about the way men were treating her that at least it would be some indication that something is going on in that department? Well, that's certainly- you know, that would all be taken into account when there's an investigation. But, you know, I think that- And I'm not suggesting she would necessarily prevail if you went to trial on this, but we're at summary judgment. And so the question is, and the court could- could take into account all the things that were time-barred, plus all the more current things. And it's the background of what happened when things were time-barred, as well as the more current things. And I just don't see why there wasn't enough evidence to deny the summary judgment motion and to go forward with the trial. And my answer to that is this, Your Honor. To the extent that the court is considering all of the pre-2004 incidents, I don't believe that that's what's called for under this court's precedent that- Well, it can be considered for background purposes. Not- but not for purposes of a hostile work environment. No, we have to look at the more current incidents, which we're looking at those as well. But the gap in time under the Salon case, and Lucas, and Tinner, and all of those post-Morgan cases, decisions of this court said that the question of whether certain acts that are too far back in time, and in this case, we're talking a gap of from the end of 2003 all the way to at the earliest 2007. That's not a continuing pattern. That is not a continuing pattern, and they shouldn't be taken into account. But even if, for the sake of argument, the court looks at all of it, it's not simply a matter of can you find an instance where somebody has made a comment that's offensive or has made a passing touch of the shoulder. The conduct for it to be actionable has to be much worse than that. And the fact that this is spread out over a number of years, I don't think it's fair to characterize Ford's position on this as saying that we're not taking into account all the circumstances. We certainly are taking into account all the circumstances under this court's precedent, which includes the fact that these acts are unconnected. It's over a long period of time. It's different people acting. And definitely, I think that the fact that the contact had ended once Ford intervened establishes as a matter of law that its conduct was reasonable. So in September, as I counted, there were like four incidents. One with Al Wills, the supervisor, in September. September, Perry Haynes. September, Eugene White. September, 2011. This is the unknown. And then we have four instances in 2012 and one in, how many? Two in 13 and 14. Those all count, the more current ones. Do you agree with that? I agree. That's within the time period for the court to consider. Okay. Well, thank you, Ms. DeGrand. Mr. Kelleher? Thanks very much, Your Honors. Thank you, Your Honors. As the court knows, the mere existence of a harassment policy is not a cure-all. And the district court's reasoning that Ford has a harassment policy that simply defies case law. It's also not an excuse to pardon Ford for its behavior. The penalty of counseling or reprimanding or firing, we're not necessarily asking that everyone be fired. We're just asking that the harassment stop. And case law is clear that if the policy and what an employer is doing to implement that policy is not effective, then the purpose of the policy is superfluous. Counsel states that it acted reasonably. But as Your Honors point out, if this problem was recurring month after month, year after year, it's hard to say with a straight face that Ford acted reasonably. And the purpose, again, of Title VII is to make an environment, a work environment that is not hostile. And obviously, that is not the case here. Excuse me. The EEOC found a class-wide determination of both harassment and retaliation. Put simply, this is an environment rife with hostility and harassment towards female workers. If there are no further questions, we would ask that the court reverse and remand for a jury. Thank you very much. Thank you, Your Honor. So next case is